UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| RAUL RODRIGUEZ-CERVANTES, | ) | |
| Institutional ID No. 21920-180, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:12-CV-196-BG |
| GILES W. DALBY CORRECTIONAL | ) | ECF |
| FACILITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**I.   Introduction**

Plaintiff Raul Rodriguez-Cervantes is a federal inmate incarcerated at Giles W. Dalby Correctional Facility (Dalby Facility), a prison owned by Management & Training Corporation. He brings this action *in forma pauperis* claiming that his constitutional rights were violated at the prison and identifies the Defendants as I. Julian, an officer at the prison; and "Does 1-100," unspecified employees at the prison. He seeks millions in damages.

The undersigned held a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985), and now recommends that the district court dismiss Rodriguez-Cervantes's complaint pursuant to 28 U.S.C. § 1915(e)(2)(b). Dismissal of Rodriguez-Cervantes's Complaint is required under § 1915(e)(2)(B) because Rodriguez-Cervantes (1) brought this action *in forma pauperis* and (2) asserts legally frivolous claims.

**II.   Discussion**

According to an incident/hearing report Rodriguez-Cervantes filed with his Complaint, Defendant Julian accused Rodriguez-Cervantes of acting with insolence toward her and, specifically,

accused him of referring to her in vulgar terms. (Pl.'s Compl. 9.) According to the report, a committee found Rodriguez-Cervantes guilty of the charge and punished him with commissary and telephone restrictions. *Id.*

Rodriguez-Cervantes claims that Officer Julian's accusation was false; he was found guilty of the charge that resulted from her accusation; and Defendants punished him by assigning him to the Special Housing Unit (SHU), a place of segregated confinement at Dalby Facility. Rodriguez-Cervantes contends that his placement in the SHU constituted "punishment beyond the sentence imposed" by the sentencing court for his criminal conviction. (Pl.'s Compl. 4.) He also claims his due process rights were violated.

Rodriguez-Cervantes's claims do not demonstrate a constitutional violation. First, to the extent Rodriguez-Cervantes's claim of "punishment beyond the sentence" imposed by the sentencing court may be construed as an Eighth Amendment claim, his allegations fall short of the standard required to demonstrate cruel and unusual punishment. Rodriguez-Cervantes claims he was housed in the SHU for a total of nine days, and he complains only of his placement in segregation and not of any specific conditions in his segregation cell or a deterioration of his health while in the SHU. Placement in segregation for a mere nine days does not constitute cruel and unusual punishment. *Hernandez v. Velasquez*, 522 F.3d 556, 560–61 (5th Cir. 2008) (finding that prisoner's placement in lock down status for thirteen months was not cruel and unusual punishment). Significantly, Rodriguez-Cervantes has not alleged that he was subjected to conditions in the SHU that could be characterized as unnecessary and wanton that would violate contemporary standards of decency. *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981); *compare Foulds v. Corley*, 833 F.2d 52, 54 (5th Cir. 1987) (allegations of "extremely cold" and rat-

infested solitary confinement cell stated Eighth Amendment claim ). Rodriguez-Cervantes's allegation that his placement in the SHU was punishment beyond the sentence imposed by the sentencing court is frivolous.

His due process claim is likewise frivolous. As an initial note, the report Rodriguez-Cervantes filed with his Complaint shows that he was punished with thirty days of commissary and telephone restriction rather than placement in the SHU. (Pl.'s Compl. 9.) Nonetheless, the report shows that Rodriguez-Cervantes was given notice of the disciplinary case Officer Julian filed against him and appeared at a hearing that was held on the charge and at which he provided his version of the events at issue. *Id.* According to the report, Rodriguez-Cervantes admitted that he did, in fact, make remarks about Officer Julian; however, he claimed he was speaking to another inmate and was not looking toward Officer Julian when he made the remark. (Pl.'s Compl. 9.) Based on the information in the report, Rodriguez-Cervantes was provided with adequate process before the finding of guilt in his case. *See Morgan v. Quarterman*, 570 F.3d 663, 668 (5th Cir. 2009) (acknowledging a prisoner's right to notice, presence at hearing and opportunity to call witnesses, and written statement of reasons for disciplinary action).

Further, a guilty determination in a disciplinary case passes court review if there are "some facts" or "any evidence at all" to support the determination. *Gibbs v. King,* 779 F.2d 1040, 1044 (5th Cir. 1986) (citations omitted). According to the report that Rodriguez-Cervantes attached to his Complaint, although there was some disagreement regarding the correct translation of some of the words Rodriguez-Cervantes used, he admitted that he made remarks about Officer Julian on the date in question. The finding of guilt was therefore based on some evidence. A court must not set aside decisions made by prison administration, such as the disciplinary case at issue in this case,

3

when there is some basis in fact to support it. *See Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001).

In addition, Rodriguez-Cervantes has not alleged that Julian's accusation was retaliatory. Nor has he shown that the finding of guilt in the disciplinary case was overturned on appeal; in fact, documents Rodriguez-Cervantes attached to his Complaint show that he appealed the disciplinary case, and it was upheld. (Pl.'s Compl. 10.)

Further, not every punitive action a prisoner experiences during incarceration gives rise to due process protections. *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). In fact, it is expected that prisoners who violate prison rules will be subjected to punitive actions that further curtail the limited freedom allowed in prison: "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id*. at 485. In *Sandin* the prisoner was placed in segregated confinement as punishment for misconduct, including the use of abusive and obscene language toward a prison officer. *Id*. at 475. The Court of Appeals for the Ninth Circuit found that the prisoner had a liberty interest in remaining free from confinement in disciplinary segregation and that there were disputed issues of fact as to whether he received all the process to which he was entitled. *Id*. at 476.

The Supreme Court reversed and held that due process protections are limited to only those freedoms from restraint that impose atypical and significant hardship on a prisoner in relation to ordinary prison life. *Id*. at 484. The court noted that the conditions in the prison's punitive segregation mirrored those in administrative segregation and protective custody and that the prisoner's placement in punitive segregation did not therefore "work a major disruption in his environment." *Id*. at 485–86. The Court concluded that the prisoner's discipline in segregation did

not present the type of atypical, significant deprivations that would trigger due process protections. *Id*.

As in *Sandin*, the plaintiff in this case claims he was placed in punitive segregation for allegedly using abusive and insolent language toward an officer. As in *Sandin,* nothing in this case demonstrates that the conditions in the SHU were a dramatic departure from the conditions in other types of segregated confinement at Dalby Facility.

Rodriguez-Cervantes may have experienced a sense of isolation while temporarily confined in the SHU, but he has not alleged that he was subjected to extreme conditions. Because the sanction that Rodriguez-Cervantes received as a result of the disciplinary case was not an atypical, significant deprivation in the prison context, he has failed to state a due process claim. *Sandin*, 515 U.S. at 486; *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995) (applying *Sandin* analysis to claim brought by federal prisoner).

Lastly, to the extent Rodriguez-Cervantes claims the discipline for the words he used violated his free speech rights, his claim is frivolous. "In the First Amendment context, a prisoner retains only those rights 'that are not inconsistent . . . with the legitimate penological objectives of the corrections system.'" *Morgan v. Quarternman*, 570 F.3d 663, 666 (5th Cir. 2009) (quoting *Pell v. Procunier*, 417 U.S. 817, 822, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974)). Penological objectives in the corrections system include security, order, and rehabilitation. *Id*. (citations omitted). With respect to rehabilitation, where an inmate demonstrates "completely unjustified disrespect for authority," disciplinary action "serves to correct behavior that would seriously prejudice [the inmate] when he returns to the civil world." *Id.* at 667. Accordingly, a prison is justified in disciplining a prisoner who expresses disrespect for a prison official in an "unacceptably vulgar form." *Id.*

Further, where alternative methods of expressing criticism such as internal grievance procedures are available, "[p]rison officials may legitimately punish inmates who verbally confront institutional authority without running afoul of the First Amendment." *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 864 (5th Cir. 2004). The documents Rodriguez-Cervantes filed with his Complaint demonstrate that Dalby Facility provides prisoners with a means to express criticism of prison officials through the grievance system.

### III.   Recommendation

The court is required to dismiss a case brought *in forma pauperis* if it is determined that the complaint is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2013). An action is frivolous if it lacks an arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 1831–32, 104 L. Ed. 2d 338 (1989). An action lacks an arguable basis in law if it is based on an "indisputably meritless legal theory." *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (citations omitted). The legal theories Rodriguez-Cervantes advances to support his claims are indisputably meritless. The undersigned therefore recommends that the district court dismiss Rodriguez-Cervantes's Complaint as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

### IV.   Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2013); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and

specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

        Dated:        June 13, 2013.

NANCY M. KOENIG
United States Magistrate Judge